**UNITED STATES of America**
**v.**
**John CLINTON, Margaret Clinton, State of New York Tax Commission et al., Defendants.**

**Civ. 121–374.**

United States District Court
S. D. New York.
Aug. 23, 1966.

See also, D.C., 232 F.Supp. 957.

Robert M. Morgenthau, U. S. Atty. for the S.D.N.Y., Dawnald R. Henderson, Asst. U. S. Atty., of counsel, for plaintiff.

John E. Mahoney, Manhasset, N. Y., for defendant.

CANNELLA, District Judge.

This action was instituted on June 24, 1957 to foreclose a lien for unpaid taxes, due and owing from John and Margaret Clinton, against a fund in the amount of $23,545.17 held by the Police Property Clerk of the City of New York. The plaintiff claims the sum of $11,825.47 plus interest and penalties out of the fund. Judgment is hereby rendered for the plaintiff against all the defendants and it is ordered that defendant Rosetti, the Police Property Clerk, pay over to the United States Government out of the fund in question, an amount sufficient to pay the principal, interest and penalties due on account of the plaintiff's lien. It is further ordered that any sum remaining out of the fund after satisfaction of the plaintiff's lien is to be paid over to the defendant, State of New York Tax Commission, which has a claim for unpaid taxes against defendant John Clinton.

This court has jurisdiction in this case by virtue of 26 U.S.C. § 7403, which provides for the bringing of a civil action to enforce a lien or to subject property to the payment of taxes due.

This case was tried non-jury by the court on January 20, 1966.

The court finds from the evidence adduced and the undisputed facts that on February 26, 1957, the defendant John Clinton was arrested by the New York City Police. Pursuant to a search warrant the police recovered monies, bank books and records leading to safe deposit boxes, whether in Clinton's name or someone else's, and as a result seized $313.00 from the person of John Clinton; $950.00 from the home of Rocco Monfredo; $14,500.00 from a safety box in the Long Island City Savings Bank in the names of John and Margaret Murray; and $8100.00 from a safety box in the Chase Manhattan Bank, in the name of Frank Vitarelli. The total fund of $23,863.00 was deposited with defendant Thomas E. Rosetti, Police Property Clerk, on March 11, 1957.

On March 24, 1957, John Clinton was indicted for violation of Section 580 of the New York Penal Law, McKinney's Consol.Laws, c. 40 and Sections 340 and 357 of the Banking Law of New York, McKinney's Consol.Laws, c. 2. On April 25, 1957, he pleaded guilty to two counts of the indictment, both of which were misdemeanors.

On March 28, 1957, an assessment for unpaid taxes was made by the District Director of Internal Revenue against John and Margaret Clinton. Notice of lien was duly filed with the Registrar of the City of New York, New York County, on March 29, 1957. A notice of levy was served upon the Police Property Clerk on March 29, 1957. On May 17, 1965, on the bases of the abovementioned assessment, a judgment was entered in the amount of $11,825.47, plus interest and penalties in the Tax Court.[1] The amount represents the taxes owing and due to the plaintiff from defendants John and Margaret Clinton.

The New York State Tax Commission assessed unpaid taxes against defendant John Clinton in the amount of $55,190.50, plus interest and filed a warrant for such state taxes with the Clerk of the County of New York on April 1, 1957. The Commission thus also claims a lien on the fund in the possession of the Police Property Clerk.

On April 8, 1957, Matthew H. Brandenburg, who was retained as counsel by the Clintons, served notice of attorney's lien on the Police Property Clerk.

The Police Property Clerk refused to honor the levy served on him by the plaintiff. It was the Property Clerk's position that the money composing the fund was used in illegal activities and thus defendant John Clinton has no property in such fund, under New York law. He also claims that under Section 435-4.0 of the Administrative Code of the City

---

1. Defendants John and Margaret Clinton consented to the entry of judgment on account of unpaid taxes for the years 1949 through 1955 inclusive, in the amount of $11,825.47.

of New York, title to the fund properly vests in the Police Property Clerk. It is the Property Clerk's further contention that the search warrant under which the fund was seized was validly issued and the seizure was lawful in every way.

The plaintiff takes the position that the Property Clerk has no claim to said funds since his claim must rest on Section 435–4.0 of the Administrative Code of the City of New York, which is allegedly unconstitutional as a deprivation of the right to property without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution. The plaintiff further contends that the fund properly belongs to defendant John Clinton and is not the proceeds of illegal activity on the part of John Clinton.

The position of defendants John and Margaret Clinton is that the search warrant was improperly issued and executed and the Police Property Clerk has no claim to the fund in question since it was obtained through illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution. They further contend, as does the plaintiff that the fund is theirs and not the proceeds of illegal activity, and that Section 435–4.0 of the Administrative Code of the City of New York is unconstitutional.

A pivotal issue in this case is whether or not the fund held by the Police Property Clerk belongs to defendant John Clinton. For the plaintiff's federal tax lien to attach it is necessary that the fund belong to defendant John Clinton.[2] 26 U.S.C. § 6331(a).

■ ■ As to the $313.00 taken from the person of defendant John Clinton, there arises a presumption that this money belongs to him. The burden is on the Police Property Clerk to rebut that presumption. United States v. Leuci, 160 F.Supp. 715 (E.D.N.Y.1958); Norris v. Camp, 144 F.2d 1 (10th Cir. 1944). The Police Property Clerk introduced no evidence during the trial which rebutted the presumption. Therefore, as to the $313.00, this court finds that it belongs to defendant John Clinton.

■■ As to the money taken from Rocco Monfredo and from the safety deposit boxes in names other than that of defendant John Clinton, the plaintiff has the burden of proof by the fair preponderance of the credible evidence that the money belonged to John Clinton. This court finds that, through the testimony elicited at the trial from the witnesses and from other evidence introduced during the trial, the plaintiff has sustained its burden. For example, the plaintiff established that the bankbooks and other indicia of ownership were in the possession of John Clinton. The court also believes that the testimony given by defendants John and Margaret Clinton as to the ownership of the fund, is true.

Therefore it is the finding of this court that the entire fund in the possession of the Police Property Clerk is owned by John Clinton.

The Police Property Clerk argued that even if defendant John Clinton owned the money at one time, he now has no property right in it.

■ ■ Questions of title to property and rights to property are governed by state law, whereas questions as to the creation and enforcement of federal tax liens are controlled by federal statutes. United States v. Leuci, supra. See also the opinion of Bryan, J., on the motion for summary judgment in the instant case (Clinton) which was rendered on October 23, 1963; United States v. Ortiz, 140 F.Supp. 355 (S.D.N.Y.1956). It is clearly the law of New York that a wrongdoer obtains no interest in property illegally obtained. Hofferman v. Simmons, 290 N.Y. 449, 49 N.E.2d 523 (1943). See also United States v. Ortiz, supra; United States v. Pagan, 140 F.Supp. 711 (S.D.N.Y.1955).

■ Section 435–4.0(b) of the Administrative Code of the City of New York,

---

2. The lien for federal taxes is imposed by 26 U.S.C. § 6321.

in essence, provides that all property or money suspected of having been unlawfully obtained or of being the proceeds of crime or suspected of having been used for the commission of a crime or in furtherance of a crime, shall be given into the custody of and kept by the Police Property Clerk. Section 435–4.0(f) provides that a claimant of such fund in the possession of the Police Property Clerk "shall establish that he has a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner." This court finds that although there was some justification underlying the suspicion at the time the money was seized, that the money was unlawfully obtained, the evidence adduced during the course of the trial establishes to this court's satisfaction that defendant John Clinton has a lawful property right in such fund and that such fund is not the proceeds of illegal activities.

Therefore the Police Property Clerk has no right to detain the fund.

Having determined this, it is now necessary to consider the validity and priorities of the liens claimed by the plaintiff and defendants Brandenburg and the State of New York Tax Commission. This court finds that plaintiff and defendant State of New York Tax Commission have valid and subsisting liens.[3] It should be noted at this point that the Tax Commission concedes that the plaintiff's lien is superior to its own.

Although it is doubtful if defendant Brandenburg has a valid attorney's charging lien at all under state law, as will be discussed later, this court assumes it to be valid for the purposes of the following discussion on the priority of a federal tax lien. "The priority of a federal tax lien provided by 26 U.S.C. 6321 as against liens created under state law is governed by the common-law rule —'the first in time is the first in right.'" United States v. Pioneer American Ins. Co., 374 U.S. 84, 87, 83 S.Ct.

1651, 10 L.Ed.2d 770 (1963). See United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). The characterization by states of their liens, while good for all state purposes, does not necessarily bind the federal courts. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Pay-O-Matic Corp., 162 F.Supp. 154 (S.D.N.Y.), aff'd sub nom. United States v. Goldstein, 256 F.2d 581 (2d Cir.), cert. denied 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed.2d 68 (1958).

It must be kept in mind, however, that a choate state-created lien will take priority over later federal tax liens. United States v. City of New Britain, supra. Inchoate liens, of course, will not. United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955). See United States v. Pioneer American Ins. Co., supra. The federal test is that liens are "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. City of New Britain, supra, 347 U.S. at 84, 74 S.Ct. at 369; United States v. Pioneer American Ins. Co., supra, 374 U.S. at 89, 83 S.Ct. 1651.

There is no doubt that under the idea first in right, first in time, the plaintiff's lien would be prior to that of defendant Brandenburg, since plaintiff filed notice of lien on March 29, 1957, while defendant Brandenburg did not do so until April 8, 1957.

However, it is also necessary to consider the question of whether the defendant Brandenburg's charging lien was choate at the time that the plaintiff filed notice of lien on March 29, 1957. Even assuming that the identity of the lienholder and the property subject to the lien was definite at the time, the plaintiff filed its notice of lien, this court finds, (despite the fact defendant Bran-

---

3. The lien for state taxes arises under Section 380 of the New York State Tax Law, McKinney's Consol.Laws, c. 60.

denburg mentioned the retainer sum of $7,500.00 in his answer) that the amount of the lien for attorney's fees was undetermined and indefinite when notice of the federal tax lien was filed on March 29, 1957. The charging lien of defendant Brandenburg was inchoate on March 29, 1957, since the fair value of his services could not be determined as of that date and therefore the plaintiff's lien has priority over that of defendant Brandenburg.

The last matter for the court to discuss is whether defendant Brandenburg or defendant State of New York Tax Commission has a superior interest in the fund remaining after satisfaction of the plaintiff's lien. Defendant Brandenburg claims that under the New York Judiciary Law, McKinney's Consol.Laws, c. 30, § 475 a charging lien in his favor arose as soon as he began to render services for the defendant John Clinton. Judiciary Law, § 475 reads in part:

> From the commencement of an action, special or other proceeding in any court * * * or the service of an answer containing counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come * * *.

In the present case defendant Brandenburg's claim arises from services rendered in relation to ta criminal matter in which he represented John Clinton who eventually pleaded guilty.

■ It is clear to this court that under the facts present, defendant would not be entitled to any charging lien on the basis of Judiciary Law, § 475. There was, of course, no cause of action, claim or counterclaim of his client to which a lien could attach. Also, the fund in question in this case was obviously not the result of Brandenburg's efforts in the criminal matter on behalf of a defendant.

■ An attorney who represents a defendant cannot have a charging lien in the absence of a counterclaim. National Exhibition Co. v. Crane, 167 N.Y. 505, 60 N.E. 768 (1901); Manusse v. Mattia, 10 N.Y.S.2d 495 (Sup.Ct.1939). In the *Manusse* case, an attorney who represented a defendant in criminal proceedings moved for a lien seemingly for his services in the criminal proceeding. The court held that he could not have a charging lien under the facts present in the case.

■ Thus, under New York law, defendant Brandenburg is not entitled to a charging lien at all in the present case. This being so defendant Brandenburg has no right whatsoever in the fund held by the Police Property Clerk and therefore the Tax Commission has a right to that portion of the fund remaining after satisfaction of plaintiff's lien.

■ Even assuming that defendant Brandenburg had a right to such a lien, it could not arise pursuant to Judiciary Law, § 475 under which the lien would arise upon commencement of an action or service of an answer containing a counterclaim. This being true, if Brandenburg did have a lien, it would not arise until the filing of notice of lien which occurred after the filing of the State of New York Tax Commission which would therefore give the Commission priority.

In any event, the plaintiff is entitled to $11,825.47 plus interest and penalties out of the fund held by the Police Property Clerk and defendant State of New York Tax Commission is entitled to anything remaining after satisfaction of the plaintiff's lien.

In view of the above decision, it is not necessary for this court to determine whether or not Section 435–4.0 of the Administrative Code of the City of New York is constitutional, nor to determine whether or not the search warrant was properly issued and whether consequent search and seizure was illegal.

Submit order.